UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE NATIONAL RETIREMENT FUND and THE
BOARD OF TRUSTEES OF THE NATIONAL
RETIREMENT FUND,

Plaintiffs,

-v.-

SAFRAN SA; SAFRAN USA, INC.; FAN BLADE
ASSOCIATES, INC.; SAFRAN AEROSPACE
COMPOSITES, LLC; SNECMA PARTICIPATIONS,
INC.; SAFRAN POWER UNITS SAN DIEGO, LLC;
SAFRAN POWER UNITS USA, LLC; SAFRAN
HELICOPTER ENGINES USA, INC.; SAFRAN
LANDING SYSTEMS KENTUCKY, LLC; SAFRAN
LANDING SYSTEMS WHEEL & BRAKE
SERVICES, LLC; SAFRAN LANDING SYSTEMS
SERVICES MIAMI, INC.; LABINAL
INVESTMENTS, LLC; SAFRAN ELECTRICAL &
POWER USA, LLC; SAFRAN POWER USA, LLC;
SAFRAN ELECTRICAL COMPONENTS USA, INC.;
OPTICS 1, INC.; SAFRAN ELECTRONICS &
DEFENSE, AVIONICS USA, LLC; SAGEM USA,
INC.; SAFRAN DATA SYSTEMS INC.; IDD
AEROSPACE CORP.; SAFRAN TRUSTED 4D,
INC.; TALEN-X, INC.; OROLIA GOVERNMENT
SYSTEMS, INC.; AVOX SYSTEMS INC.; AIR
CRUISERS COMPANY, LLC; ENGINEERED
ARRESTING SYSTEMS CORPORATION; SAFRAN
AEROSYSTEMS SERVICES AMERICAS, LLC;
SAFRAN CABIN STERLING, INC.; SAFRAN
CABIN GALLEYS US, INC.; SAFRAN CABIN
MATERIALS, LLC; SAFRAN CABIN INC.; SAFRAN
CABIN BELLINGHAM, INC.; SAFRAN SEATS
USA, LLC; SAFRAN VENTILATION SYSTEMS
USA, LLC; NORTHWEST AEROSPACE
TECHNOLOGIES, INC.; GREENPOINT
TECHNOLOGIES, INC.; SAFRAN PASSENGER
INNOVATIONS, LLC; MAG AEROSPACE
INDUSTRIES, LLC; and JOHN DOES 1-10,

Defendants.

---

24 Civ. 9902 (KPF)

**ORDER**

KATHERINE POLK FAILLA, District Judge:

At the tail end of a lengthy fact discovery period that (i) had previously been extended by this Court and (ii) had occurred concurrently with an arbitration initiated by Defendants, Defendants moved for a stay of the instant litigation in favor of the arbitration.  Plaintiffs oppose the motion.  For the reasons set forth in the remainder of this Order, the Court denies the motion.

## BACKGROUND

Plaintiffs are the National Retirement Fund (the "Fund") and its Board of Trustees; through the Board of Trustees, the Fund sponsors and administers a multiemployer pension plan (identified in this litigation as the "Legacy Plan") subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). (Dkt. #1 ("Complaint") ¶¶ 5-10).  Non-party Pioneer Aerospace Corporation ("Pioneer") participated for several years in the Legacy Plan pursuant to a collective bargaining agreement.  (Complaint ¶¶ 2, 162-163).  As of February 2018, Pioneer was a wholly owned subsidiary of Safran USA.  (*Id.* ¶ 166).[1]

According to Plaintiffs, Pioneer requested, and the Fund provided, a withdrawal liability estimate for the then-existing plan year in July 2020 and again in June 2021.  (Complaint ¶¶ 167-168).  Thereafter, in March 2022, Safran USA entered into a Stock Purchase Agreement with Aviation Safety Resources, Inc. ("ASR"), whereby ASR purchased the stock of Pioneer (the

---

[1]     Plaintiffs allege that the remaining Defendants are each a "trade or business under common control" with Pioneer and with the remaining Defendants (including Safran USA) pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), Section 414(c) of the Internal Revenue Code, 26 U.S.C. § 414, and the regulations promulgated thereunder.  (*See, e.g.,* Complaint ¶ 14).

"Sale"). (*Id.* ¶ 169). However, in November 2023, Pioneer filed for Chapter 11 bankruptcy protection, and in that same month the company withdrew from the Fund. (*Id.* ¶¶ 175-176). Plaintiffs allege that "Safran USA sold Pioneer in the Sale with a principal purpose to evade or avoid withdrawal liability." (*Id.* ¶ 173).

Safran USA did not pay the first withdrawal liability installment payment for Pioneer that was due on August 1, 2024, nor the second installment due on November 1, 2024. (Complaint ¶¶ 183, 191). Based on Safran's failures to pay, as well as Defendants' failure to respond to certain requests for information from the Fund that bore on the issue of whether Defendants would be unable to pay the withdrawal liability, Plaintiffs contended that Defendants had defaulted under the relevant plan documents, and that "the Fund [wa]s entitled to accelerate and demand full and immediate payment of the outstanding withdrawal liability, as well as interest, liquidated damages, attorneys' fees, and costs." (*See, e.g., id.* ¶¶ 201-218).

Plaintiffs filed the complaint in this matter on December 23, 2024. (Dkt. #1). Defendants filed their answer on March 10, 2025. (Dkt. #53). On March 13, 2025, the parties submitted a joint letter and proposed case management plan. (Dkt. #54). Among other information conveyed in the joint letter, Defendants demanded arbitration and offered their view that the instant litigation "should be stayed during the pendency of arbitration." (*Id.* at 4). However, Defendant elected not to file a motion to stay for six months. Instead, the parties requested that the Court adjourn a scheduled initial pretrial

conference and allow the matter to proceed to discovery. (*Id.* at 5). The Court granted the adjournment request and adopted the parties' proposed case management plan. (Dkt. #57, 58).

Under the initial case management plan, fact discovery was scheduled to conclude on or before July 18, 2025, and expert discovery was scheduled to conclude on or before September 1, 2025. (Dkt. #58 at 2). On July 3, 2025, with Defendants' consent, Plaintiffs requested a two-month extension of the deadlines "for the deposition of fact witnesses, the close of fact discovery, and the close of expert discovery." (Dkt. #63 at 1). As support, Plaintiffs cited the fact that they had not yet received documents from Defendants. (*Id.* at 2). No mention was made of any pending arbitration. The Court granted the request, but made clear that it would not grant further extension requests absent exigent circumstances. (Dkt. #64).

On September 2, 2025, approximately two weeks before the revised fact discovery deadline, Defendants filed an order to show cause and supporting papers requesting that the Court stay all proceedings pending the completion of the arbitration. (Dkt. #68-70). Defendants' papers advised, among other things, that an arbitration had been initiated on March 25, 2025, and that the arbitrator had issued a schedule for the first phase of discovery on June 3, 2025. (Dkt. #69 at 3). In response, the Court issued an order on September 3, 2025, scheduling a telephonic conference to take place on September 5, 2025. (Dkt. #71).

4

At the September 5, 2025 conference, Defendants' counsel indicated that Defendants had always believed the matter should be stayed, but had not moved earlier because "[d]iscovery in this case has not, to this point, been burdensome." (Dkt. #72 (transcript of September 5, 2025 conference ("Tr.")) at 5). Counsel further explained that while Defendants were not opposed to "completing discovery on the current schedule" (*id.* at 6), they *were* opposed to scheduling summary judgment practice or a trial (*see id.* at 6-7). Plaintiffs' counsel expressed their opposition to the stay motion, arguing that it was "black letter law" that Defendants were obligated to pay their withdrawal liability even as they dispute the assessment in an arbitration. (*Id.* at 8, 10).

After the conference, Plaintiffs submitted a formal opposition to Defendants' motion on October 6, 2025. (Dkt. #77-78). Defendants filed their reply on October 20, 2025. (Dkt. #80). The parties have also each filed a post-briefing letter concerning the progress of discovery. (Dkt. #81-82).[2]

## DISCUSSION

### A.    Overview of the Parties' Arguments

As suggested by its comments during the September 25, 2025 conference, the Court was taken by surprise by the stay request, given the fact that discovery in the litigation and the arbitration had been proceeding

---

[2]    The Court has not taken these letters into consideration in resolving the instant motion. While Defendants argue that Plaintiffs' responses "make clear that Plaintiffs are unwilling to engage in meaningful discovery in this litigation" (Dkt. #81 at 1), Plaintiffs counter that Defendants misperceive the division of issues between the litigation and the arbitration, and have failed to comply with the Court's individual rule that they meet and confer before bringing disputes to the Court (Dkt. #82 at 1-2).

concurrently for a period of nearly six months. (*See also* Tr. 6 (defense counsel noting, "[A]nd to be clear, your Honor, we're not opposed to having discovery conclude in this case, and we're not asking for any further extensions.")). At the September 25, 2025 conference, the Court learned that the nub of the dispute between the parties was not the completion of discovery, but rather the scheduling of Plaintiffs' contemplated motion practice and a trial while the arbitration was pending. More fundamentally, the parties dispute Plaintiffs' ability to compel Defendants' to pay anything more than periodic installment payments during the pendency of the arbitration.

Both sides agree that Defendants are entitled to challenge the assessment of withdrawal liability (and, by extension, the parties liable for paying that withdrawal liability) in an arbitration. (*See, e.g.*, Dkt. #69 at 4-5; Dkt. #77 at 8). *See also* 29 U.S.C. § 1401(a)(1) ("Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title shall be resolved through arbitration."). Both sides also agree that, as of the date of their submissions, Defendants are now current with their payment of Pioneer's withdrawal liability installment payments. (*See, e.g.*, Dkt. #69 at 7; Dkt. #77 at 12-13). After reviewing the cases cited by the parties and conducting its own research, the Court believes that the parties' dispute distills into two questions:

    i.      Do Plaintiffs have the right to accelerate the entire amount due (including the remaining withdrawal payments, liquidated damages, attorneys' fees, and costs) and to compel Defendants to pay that amount based on Defendants' prior non-payment and/or their

6

> > continued failure to respond to requests for information from Plaintiffs?
>
> ii.   If so, do Plaintiffs have the right to proceed with these demands in this litigation despite Defendants' timely commencement of an arbitration proceeding?

As explained in the remainder of this Order, the Court answers both questions in the affirmative and thus denies the motion for a stay.

## B.   Applicable Law

"ERISA is a 'pay-first-question-later' statute in that an employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability." *Trs. of Laundry Dry Cleaning Workers & Allied Ret. Fund, Workers United* v. *Oceanside Int'l Indus., Inc.*, No. 16 Civ. 6194 (NSR), 2018 WL 1517207, at *1 (S.D.N.Y. Mar. 27, 2018) (quoting *Rao* v. *Prest Metals*, 149 F. Supp. 2d 1, 5-6 (E.D.N.Y. 2001)), *cited in Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund* v. *Mensch Millwork Corp.*, No. 23 Civ.  9703 (LTS) (VF), 2025 WL 2374894, at *2 (S.D.N.Y. Aug. 15, 2025).[3]  The "pay now, dispute later" concept is intended to address and "to alleviate the risk that during the course of arbitration, an employer will become insolvent, and the fund will not be able to collect in the event of a favorable award." *Bakery &*

---

[3]     *See also* 29 U.S.C. § 1401(d):

> Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration, with any necessary adjustments in subsequent payments for overpayments or underpayments arising out of the decision of the arbitrator with respect to the determination.  If the employer fails to make timely payment in accordance with such final decision, the employer shall be treated as being delinquent in the making of a contribution required under the plan (within the meaning of section 1145 of this title).

*Confectionery Union & Indus. Int'l Pension Fund* v. *Zaro Bake Shop, Inc.*, No. 20 Civ. 9894 (LJL), 2021 WL 2350094, at *3 (S.D.N.Y. June 8, 2021) (quoting *Findlay Truck Line, Inc.* v. *Cent. States, Se. & Sw. Areas Pension Fund*, 726 F.3d 738, 741 (6th Cir. 2013)).

When an employer withdraws from a multiemployer plan, the plan sponsor must determine the amount of the employer's withdrawal liability, notify the employer of the amount, and make a demand for payment. 29 U.S.C. § 1382. Once the employer receives notice of the demand, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2); *see also Trs. of Amalgamated Ins. Fund* v. *Steve Petix Clothier, Inc.*, No. 03 Civ. 4530 (PKC), 2004 WL 67480, at *3 (S.D.N.Y. Jan. 15, 2004).

As noted, 29 U.S.C. § 1401(a)(1) requires arbitration of disputes between an employer and a plan sponsor regarding disputes arising under certain specified provisions. One such provision is 29 U.S.C. § 1399, which addresses employer defaults and provides in relevant part:

> (5) [i]n the event of default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made. For purposes of this section, the term "default" means —
>
> (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and

> (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(c)(5); *see generally T.I.M.E.-DC, Inc.* v. *Mgmt.-Lab. Welfare & Pension Funds, of Loc. 1730 Int'l Longshoremen's Ass'n,* 756 F.2d 939, 944-45 (2d Cir. 1985); *Nat'l Ret. Fund* v. *InterContinental Hotels Grp. Res., LLC,* No. 19 Civ. 8018 (GHW), 2020 WL 1922755, at *4 (S.D.N.Y. Apr. 21, 2020) ("*IHG*") (collecting cases). "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(6). Alternatively, a multiemployer plan can adopt "other terms and conditions for the satisfaction of an employer's withdrawal liability," so long as they do not conflict with ERISA or the regulations of the corporation. *Id.* § 1399(c)(7).

## C.   Analysis

Defendants timely commenced an arbitration and claim that they are (and will continue to be) current on making quarterly withdrawal payments to the Fund. (Dkt. #69 at 3; *but see* Dkt. #77 at 13 (Plaintiffs noting that "Defendants have paid *one* installment timely to date")). Defendants seek a stay of this litigation on the basis that this Court cannot resolve the amount of damages they owe to Plaintiffs because only an arbitrator can resolve the antecedent issue of Defendants' liability. (Dkt. #69 at 6-7). In Plaintiffs' estimation, by contrast, granting a stay would "flip 'pay now, dispute later' on its head" by allowing Defendants "to avoid paying the defaulted withdrawal

9

liability amount and mandatory statutory damages until the Arbitration is over." (Dkt. #77 at 10).

The Court now considers the two disputed issues, which together concern Plaintiffs' ability, on a showing of default, to accelerate the payment of all of the damages to which the Fund is entitled, despite the pendency of an arbitration. After all, if Plaintiffs have no such right, there would seem to be little harm to their position in granting a stay contingent on Defendants' continued payment of withdrawal liability installment payments. The Court first considers whether there is a legal foothold for Plaintiffs' arguments. As it happens, the Court's research disclosed little case law on point.[4] Nevertheless, several decisions within this Circuit persuade the Court that Plaintiffs have a legal right to demand, on an interim basis, acceleration of the full amount of withdrawal liability, interest, fees, and costs pending arbitration.

The most germane case arose a few years ago in the Eastern District of New York: In *Gesualdi* v. *Scara-Mix, Inc.*, No. 14 Civ. 765 (JS) (AKT), 2017 WL 9485710 (E.D.N.Y. Feb. 7, 2017) ("*Scara-Mix I*"), *report and recommendation adopted*, No. 14 Civ. 765 (JS)(AKT), 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017) ("*Scara-Mix II*"), trustees of certain funds administered for the benefit of a union sought to collect withdrawal liability, interest, liquidated damages, attorneys' fees, and costs based on the defendant's failure to pay withdrawal liability installment payments. After receipt of the plaintiffs' notice and demand for

---

[4]    As Plaintiffs note, many of Defendants' cited authorities for a stay occur in non-withdrawal liability contexts, and those that concern withdrawal liability are easily distinguished on their facts. (*See, e.g.*, Dkt. #77 at 18-19).

10

payment of withdrawal liability, the defendant invoked its right under Section 1401 to arbitrate the assessment of that liability. *Scara-Mix I*, 2017 WL 9485710, at *6. When the defendant continued not to make withdrawal liability payments, the plaintiffs filed an action seeking not merely the back payments, but acceleration of the full amount due. *Id.* at *7.

The plaintiffs in *Scara-Mix I* moved for partial summary judgment, requesting acceleration of the withdrawal liability balance and the entry of a judgment requiring the defendant to pay that balance plus the additional fees and costs. The matter was then referred to Magistrate Judge A. Kathleen Tomlinson for a report and recommendation. In her report, Judge Tomlinson acknowledged at the outset that the ultimate determination of the defendant's default would have to be made by the arbitrator. *Scara-Mix I*, 2017 WL 9485710, at *10. She thus identified the crux of the plaintiffs' motion as "the propriety of [the p]laintiffs' determination that [the d]efendant is in default within the meaning of 29 U.S.C. § 1399(c)(5), and, if so, whether [the p]laintiffs can require an accelerated payment of the entire withdrawal liability balance, notwithstanding the pendency of the arbitration proceedings between the parties." *Id.* at *11; *see also id.* at *12 ("Having determined that these issues must be adjudicated by the arbitrator in the first instance, the narrow issue the Court must resolve is whether [the p]laintiffs have a statutory and regulatory right to effectively demand, on an interim basis, the entire withdrawal liability payment pending the arbitrator's final decision on the merits.").

11

After an exhaustive review of the relevant statutory and regulatory framework, and finding persuasive the Seventh Circuit's analysis in *Central States, Southeast and Southwest Areas Pension Fund* v. *O'Neill Brothers Transfer and Storage Co.*, 620 F.3d 766 (7th Cir. 2010), Judge Tomlinson concluded

> that a plan may find an employer in default pursuant to 29 U.S.C. § 1399(c)(5)(B) and applicable plan rules and thereby accelerate payment of the full withdrawal liability balance, notwithstanding the pendency of an arbitration. Such a result furthers the underlying goals of the [Multiemployer Pension Plan Amendments Act] and properly "shift[s] the economic burdens of withdrawal back to the employer." [*Bowers for & on Behalf of NYSA-ILA Pension Trust Fund* v. *Transportes Navieros Ecuadorianos (Transnave)*, 719 F. Supp. 166, 174 (S.D.N.Y. 1989)]; *see T.I.M.E.-DC, Inc.*, 756 F.2d at 944 ("By placing the funding burden on the withdrawing employer, the [MPPAA] relieves the PBGC of the potentially crippling burden of paying out inordinate amounts of insurance. It also reduces an employer's incentive to withdraw from the plan to escape paying for vested benefits that its employees have earned, but that the employer has not yet funded."); *Bowers* v. *Compania Peruana De Vapores, S.A.*, 689 F. Supp. 215, 216 (S.D.N.Y. 1988) (same); [*Finkel* v. *Athena Light & Power LLC*, No. 14 Civ. 3585 (DLI), 2016 WL 4742279, at *5 (E.D.N.Y. Sept. 11, 2016)] (same). Further, neither the statute nor the governing regulations indicate that "default payments should be treated differently from any other withdrawal liability payments, which must be made before the decision on liability is made ... [and therefore] echo the general rule of 'pay now dispute later,' and in no way indicate that acceleration due to default is an exception to this general rule." *O'Neill Bros. Transfer and Storage Co.*, 620 F.3d at 773.

*Scara-Mix I*, 2017 WL 9485710, at *15 (alterations added).

Having decided the issue in the abstract, Judge Tomlinson then proceeded to consider whether there was a basis in the record before her to

12

find the occurrence of an event that could serve as the necessary predicate for imposition of a default and accelerated damages pursuant to 29 U.S.C. § 1399(c)(5)(B). *Scara-Mix I*, 2017 WL 9485710, at *17-19. She found that the defendant's conceded insolvency was such a qualifying event, and one that was "not shielded from the penalty of payment acceleration by operation of the 'safe harbor' language in 29 C.F.R. 4219.31(c)." *Id.* at *19.[5] Accordingly, Judge Tomlinson recommended to District Judge Joanna Seybert that

> (1) [the defendant] be required to make an accelerated withdrawal liability payment consisting of the entire withdrawal liability amount alleged to be due based upon its default, pursuant to 29 U.S.C. § 1399(c)(5)(B) and the relevant plan rules, and (2) [the defendant] be subject to an ultimate finding by the arbitrator as to the overall reasonableness of Plaintiffs' default and acceleration determination.

*Scara-Mix I*, 2017 WL 9485710, at *20; *see also id.* at *19 ("Therefore, notwithstanding the ultimate reasonableness of this determination in light of the underlying facts — a decision that must be resolved by the arbitrator — [the d]efendant is obligated, at this juncture, based upon [the p]laintiff's demand, to remit the entire withdrawal liability balance pending the arbitrator's final determination on the merits.").

---

[5]   29 C.F.R. § 4219.31(c) imposes limits on a multiemployer plan's ability to declare a default (and demand acceleration) due solely to non-payment pursuant to 29 U.S.C. § 1399(c)(5)(A) where either plan review or arbitration is pending. However, courts have found that this limitation "does not apply where the default is based on a substantial likelihood that an employer will be unable to pay" under 29 U.S.C. § 1399(c)(5)(B). *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund* v. *Swan Finishing Co.*, No. 05 Civ. 6819 (SAS), 2006 WL 1292780, at *3 (S.D.N.Y. May 11, 2006) (citing 49 Fed. Reg. 22,642, at 22,644 (1984)).

After the defendant failed to object, Judge Seybert adopted Judge Tomlinson's report in its entirety.  *Scara-Mix II*, 2017 WL 945090, at *3. Thereafter, the defendant moved for Judge Seybert to vacate her order adopting the report on the grounds that the court lacked jurisdiction in the first instance to consider the plaintiffs' default and acceleration claims.  After re-reviewing the relevant statutes and case law, Judge Seybert denied the motion and reaffirmed her prior decision:

> Based on the relevant case law and statutory framework, the Court holds that it has jurisdiction to direct [the d]efendant to remit the entire amount of withdrawal liability due on an interim basis while the arbitration is pending.  The Court further finds that, subject to the determination of the arbitrator, [the p]laintiffs presented sufficient evidence to establish a basis for declaring [the d]efendant to be in default under section 1399(c)(5)(B), and as a result, this Court's March 10, 2017 Order remains in full force.

*Gesualdi* v. *Scara-Mix, Inc.*, No. 14 Civ. 765 (JS) (AKT), 2017 WL 5564673, at *6 (E.D.N.Y. Nov. 17, 2017) ("*Scara-Mix III*").[6]  In the same order, Judge Seybert

---

[6]    *See also Gesualdi* v. *Scara-Mix, Inc.*, No. 14 Civ. 765 (JS) (AKT), 2017 WL 5564673, at *5 (E.D.N.Y. Nov. 17, 2017) (internal citations omitted):

> It is well-settled that the arbitrator must determine whether Plaintiffs properly declared Defendant to be in default and accelerated the withdrawal liability.  Consistent with this principle, Judge Tomlinson's R&R and this Court's subsequent Order did not find that Plaintiff's default determination was proper, and in fact, expressly reserved that issue for the arbitrator. (*See* R&R at 38, n.8 ("The Court again stresses that its determination at this stage of the proceedings is limited to whether, as a matter of law, Plaintiffs possessed the authority to find Defendant in default and accelerate payment during the pendency of the arbitration.").)  In its motion, Defendant repeatedly mischaracterizes the Court's prior Order and implies that the Court found that the acceleration of Defendant's withdrawal liability was proper. (*See, e.g.,* Def.'s Br. at 11.)  However, the Court's prior Order determined only that Defendant was required to make an interim payment of the entire amount pending the outcome of the arbitration.  The Court did not

14

entered judgment in favor of the plaintiffs on the outstanding withdrawal liability, interest, liquidated damages, attorneys' fees, and costs. *Id.* at *11.

In a decision addressed by both parties, a sister court in this District adapted the *Scara-Mix* framework in the context of a partial motion to dismiss. *See IHG*, 2020 WL 1922755. (Dkt. #77 at 15-18; Dkt. #80 at 5-6). Of potential note, the parties in *IHG agreed* that "if there is a valid default under § 1399(c)(5)(B), [the plaintiff] can require [the defendant] to pay its full withdrawal liability on an interim basis during the pendency of arbitration." *Id.* at *6. As a result, the issue for Judge Woods, who presided over the case, was whether, on the record he could properly consider at the motion to dismiss stage, the plaintiff fund had plausibly alleged a qualifying default under the relevant trust agreement. Considering the well-pleaded allegations of the plaintiffs' complaint in tandem with the trust agreement, Judge Woods found that the plaintiffs had plausibly alleged a failure to comply with certain information requests that indicated a substantial likelihood that the defendant would not pay its withdrawal liability. He denied the motion to dismiss and allowed the case to go forward. *Id.* at *9. As relevant here, Judge Woods approved of and applied the legal rule in *Scara-Mix* — that the plaintiff had a right to require acceleration of the full withdrawal-liability amount upon the finding of a valid default — to reach his conclusion.

resolve the factual issues surrounding Defendant's default nor conclude that Plaintiffs' determination was correct. Thus, any argument relying on that premise unquestionably fails.

15

Having found a legal framework that supports a fund's acceleration of withdrawal liability and correlative damages and fees under certain circumstances, the Court proceeds to consider whether Plaintiffs in this case have made a showing of qualifying circumstances, and concludes that they have.  (*See* Complaint ¶¶ 204-218).[7]  As discussed earlier in this Order, ERISA allows for acceleration of withdrawal liability and interest upon an event of default, which can include an "event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability."  29 U.S.C. § 1399(c).  The relevant Trust Agreement provides that a qualifying event of default occurs when "the Employer fails to provide the Legacy Plan with its response to the Legacy Plan's request for information under Section 4219(a) of ERISA without reasonable explanation."  (Complaint ¶ 208 (citing Trust Agreement, Article VIII, § 6(2)(f))).[8]  And Plaintiffs have adequately alleged that Safran USA declined to respond to Plaintiffs' Section 4219(a) requests while advancing requests of its own to the Fund.  At this stage of the litigation, Plaintiffs have adequately alleged a default that allows for acceleration of withdrawal liability and related fees and costs.

In sum, the Court has identified both legal and factual bases for the relief that Plaintiffs seek in their Complaint; such relief is permitted under ERISA without contravening that statute's directive that disputes regarding

---

[7]    Given the current procedural posture, the Court has considered the well-pleaded allegations of Plaintiffs' Complaint.

[8]    ERISA Section 4219 is contained at 29 U.S.C. § 1399.

withdrawal liability be resolved in arbitration.  Though Plaintiffs have not yet moved the Court to require Defendants to make this payment on an interim basis, the Court understands that such a motion is forthcoming.  Given the foregoing analysis, the Court will not issue a stay, which would only have the effect of upending ERISA's "pay now, dispute later" framework.

### CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' motion for a stay.  Any party seeking to move for summary judgment should file a pre-motion letter on or before **December 15, 2025**, and any opposition letter should be filed on or before **December 19, 2025**.

SO ORDERED.

Dated:   December 1, 2025
         New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge