UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NATIONAL RETIREMENT FUND and THE BOARD OF TRUSTEES OF THE NATIONAL RETIREMENT FUND,

Plaintiffs,

-v.-

SAFRAN SA; SAFRAN USA, INC.; FAN BLADE ASSOCIATES, INC.; SAFRAN AEROSPACE COMPOSITES, LLC; SNECMA PARTICIPATIONS, INC.; SAFRAN POWER UNITS SAN DIEGO, LLC; SAFRAN POWER UNITS USA, LLC; SAFRAN HELICOPTER ENGINES USA, INC.; SAFRAN LANDING SYSTEMS KENTUCKY, LLC; SAFRAN LANDING SYSTEMS WHEEL & BRAKE SERVICES, LLC; SAFRAN LANDING SYSTEMS SERVICES MIAMI, INC.; LABINAL INVESTMENTS, LLC; SAFRAN ELECTRICAL & POWER USA, LLC; SAFRAN POWER USA, LLC; SAFRAN ELECTRICAL COMPONENTS USA, INC.; OPTICS 1, INC.; SAFRAN ELECTRONICS & DEFENSE, AVIONICS USA, LLC; SAGEM USA, INC.; SAFRAN DATA SYSTEMS INC.; IDD AEROSPACE CORP.; SAFRAN TRUSTED 4D, INC.; TALEN-X, INC.; OROLIA GOVERNMENT SYSTEMS, INC.; AVOX SYSTEMS, INC.; AIR CRUISERS COMPANY, LLC; ENGINEERED ARRESTING SYSTEMS CORPORATION; SAFRAN AEROSYSTEMS SERVICES AMERICAS, LLC; SAFRAN CABIN STERLING, INC.; SAFRAN CABIN GALLEYS US, INC.; SAFRAN CABIN MATERIALS, LLC; SAFRAN CABIN INC.; SAFRAN CABIN BELLINGHAM, INC.; SAFRAN SEATS USA, LLC; SAFRAN VENTILATION SYSTEMS USA, LLC; NORTHWEST AEROSPACE TECHNOLOGIES, INC.; GREENPOINT TECHNOLOGIES, INC.; SAFRAN PASSENGER INNOVATIONS, LLC; MAG AEROSPACE INDUSTRIES, LLC; JOHN DOES 1-10,

Defendants.

24 Civ. 9902 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiffs — the National Retirement Fund (the "Fund"), a Taft-Hartley trust fund, and the Board of Trustees of the National Retirement Fund — brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA") on behalf of a multiemployer pension plan (the "Legacy Plan") in order to collect, among other things, withdrawal liability and attorneys' fees from Defendants, which comprise trades or businesses under common ownership with Safran USA. Three months later, Defendants commenced an arbitration to resolve certain of the legal issues implicated by this action. Defendants then moved for this Court to stay the litigation pending the completion of the arbitration; the Court denied the motion to stay, citing persuasive decisions from other courts in this Circuit. *See Nat'l Ret. Fund* v. *Safran SA*, No. 24 Civ. 9902 (KPF), 2025 WL 3443573 (S.D.N.Y. Dec. 1, 2025).

Now before the Court is Plaintiffs' motion for summary judgment under Federal Rule of Civil Procedure 56, seeking acceleration of Defendants' withdrawal liability obligations and imposition of attorneys' fees and costs. For the reasons set forth below — which reasons draw from the same body of persuasive case law as the motion to stay — the Court grants summary judgment in favor of Plaintiffs.

## BACKGROUND[1]

### A. Factual Background[2]

The Fund, through its Board of Trustees, sponsors and administers the Legacy Plan, which is subject to ERISA. (Pl. 56.1 ¶ 2). The Fund is governed by an Agreement and Declaration of Trust. (*Id.* ¶ 3; Dkt. #78-2 ("Trust Agreement")). Pursuant to a collective bargaining agreement, non-party Pioneer Aerospace Corporation ("Pioneer") contributed to the Legacy Plan on behalf of certain covered employees. (Pl. 56.1 ¶ 4).

Defendants are trades or businesses under common ownership with Safran USA. (Pl. 56.1 ¶ 7). According to Defendants, Safran Aerosystems S.A.S. and Safran Seats S.A. acquired Zodiac US Corporation ("Zodiac"), which owned all of Pioneer, in February 2018. (Melnick Decl. ¶ 7). Defendants further assert that in March 2022, Zodiac sold all of the issued and

---

1 This Opinion draws its facts primarily from the parties' submissions in connection with Plaintiffs' motion for summary judgment. Those submissions include Plaintiffs' Local Rule 56.1 Statement ("Pl. 56.1" (Dkt. #89)), Defendants' Counterstatement to Plaintiffs' Local Rule 56.1 Statement ("Def. 56.1" (Dkt. #92)), and the Declaration of Mark Melnick in Opposition to Plaintiffs' Motion for Summary Judgment ("Melnick Decl." (Dkt. #90)). In addition, the Opinion draws certain undisputed facts from Plaintiffs' Complaint ("Compl." (Dkt. #1)).

Citations to a party's Rule 56.1 Statement incorporate by reference the documents and testimony cited therein. Where a fact stated in a movant's Rule 56.1 Statement is supported by evidence and controverted only by a conclusory statement by the opposing party, the Court finds that fact to be true. *See* Local Civil Rule 56.1(c), (d). Where Defendants agree to a fact set forth in the Plaintiffs' Rule 56.1 Statement in its entirety, the Court cites only to the Plaintiffs' Rule 56.1 Statement.

For ease of reference, the Court refers to Plaintiffs' memorandum of law in support of their motion for summary judgment as "Pl. Br." (Dkt. #88); to Defendants' memorandum of law in opposition to Plaintiffs' motion as "Def. Opp." (Dkt. #91); and to Plaintiffs' reply memorandum of law as "Pl. Reply" (Dkt. #93).

2 Additional factual background is contained in the Court's prior decision in this case, *Nat'l Ret. Fund* v. *Safran SA*, No. 24 Civ. 9902 (KPF), 2025 WL 3443573, at *1-2 (S.D.N.Y. Dec. 1, 2025), which decision is incorporated by reference.

outstanding shares of common stock of Pioneer to Aviation Safety Resources Inc. (*Id.* ¶ 8). In November 2023, Pioneer filed for Chapter 11 bankruptcy protection and withdrew from the Fund. (Compl. ¶¶ 175-176).

On June 28, 2024, Plaintiffs sent a letter to Defendants asserting that the Fund was assessing Defendants with withdrawal liability in the amount of $1,773,830, payable in 80 quarterly installments of $27,716.28, beginning August 1, 2024 (the "Assessment"). (Pl. 56.1 ¶ 8). The Assessment also included certain requests for information pursuant to a provision of ERISA, 29 U.S.C. § 1399(a). (*Id.* ¶¶ 9-10). On September 26, 2024, purporting to respond to Plaintiffs' information request, Defendants explained that they, having sold Pioneer two years prior, were no longer an "employer" within the meaning of ERISA. (Def. 56.1 ¶ 12). Defendants also requested information from Plaintiffs to better understand the Fund's actuarial calculations. (*Id.*). Plaintiffs deemed these actions a refusal to respond to the Fund's information request. (Pl. 56.1 ¶¶ 12, 18). As a result, Plaintiffs determined Defendants to be in default according to the terms of the Trust Agreement, under which default occurs when "the Employer fails to provide the Legacy Plan with its response to the Legacy Plan's request for information under Section 4219(a) of ERISA without reasonable explanation." (Def. 56.1 ¶ 19; Trust Agreement, Art. VIII, § 6(2)(f)).[3] Further, as a result of the default determination, the Fund accelerated payment pursuant to the Trust Agreement's provision "requir[ing] immediate

[3] Section 4219 of ERISA is codified at 29 U.S.C. § 1399. These citations are used interchangeably throughout this Opinion.

payment of all or a portion of the outstanding amount of [Defendants'] withdrawal liability." (Trust Agreement, Art. VIII, § 6(1)).

## B. Procedural Background

### 1. The Complaint and the Arbitration

Plaintiffs filed their Complaint in this Court on December 23, 2024. (Dkt. #1). Defendants filed their Answer on March 10, 2025. (Dkt. #53). The parties subsequently agreed to a discovery schedule set forth in their proposed Civil Case Management Plan and Scheduling Order (Dkt. #54-1), endorsed by the Court on March 19, 2025 (Dkt. #58).

On March 25, 2025, Defendants timely initiated arbitration, demanding, among other things, a determination as to whether Defendants (i) are members of a controlled group within the meaning of ERISA, (ii) defaulted under the governing Trust Agreement, and (iii) are liable for Pioneer's withdrawal liability. (Def. 56.1 ¶¶ 22-23). This arbitration proceeding is ongoing. (*See* Pl. Reply 3).

### 2. The Motion to Stay

On September 2, 2025, Defendants moved for a stay of this action in favor of the arbitration. (Dkt. #68). Plaintiffs filed their opposition to the stay motion on October 6, 2025. (Dkt. #77). Believing a stay "would only have the effect of upending ERISA's 'pay now, dispute later' framework," the Court denied Defendants' motion on December 1, 2025. *Nat'l Ret. Fund*, 2025 WL 3443573, at *8. In so concluding, the Court relied heavily on the legal analysis initially articulated in *Gesualdi* v. *Scara-Mix, Inc.*, No. 14 Civ. 765 (JS) (AKT), 2017 WL 9485710 (E.D.N.Y. Feb. 7, 2017) ("*Scara-Mix I*"), *report and*

*recommendation adopted*, 2017 WL 945090 (E.D.N.Y. Mar. 10, 2017) ("*Scara-Mix II*"), which analysis is discussed later in this Opinion.

**3. The Instant Motion**

In its Order denying Defendants' motion to stay, the Court requested that any party seeking to move for summary judgment file a pre-motion letter on or before December 15, 2025. (Dkt. #83). Plaintiffs filed a timely pre-motion letter in anticipation of moving for summary judgment (Dkt. #84), and Defendants filed their response on December 19, 2025 (Dkt. #85). The Court dispensed with its typical requirement of a pre-motion conference and set a briefing schedule. (Dkt. #86). Plaintiffs filed their summary judgment motion and supporting papers on January 30, 2026. (Dkt. #87-89). Defendants filed their opposition and supporting papers on February 27, 2026. (Dkt. #90-92). Plaintiffs filed their reply and a response to Defendants' Counterstatement to Plaintiffs' Rule 56.1 Statement on March 13, 2026. (Dkt. #93-94).

**4. Defendants' Late Payments to Date**

At the time Plaintiffs commenced this action, Defendants had not paid Plaintiffs any amounts demanded in the Assessment. (Pl. 56.1 ¶ 14). However, on April 17, 2025, Defendants paid Plaintiffs the quarterly withdrawal liability installments that were due on August 1, 2024, November 1, 2024, and February 1, 2025, plus interest. (*Id.* ¶ 15). And on May 9, 2025, Defendants paid Plaintiffs the quarterly withdrawal liability installment that was due on May 1, 2025, paying interest assessed for the late May payment on October 20, 2025. (*Id.* ¶ 16; Def. 56.1 ¶ 28). Defendants have timely paid all subsequent

quarterly withdrawal liability installments. (Def. 56.1 ¶¶ 26-27, 29). Further, on February 11, 2026, Defendants paid Plaintiffs the liquidated damages assessed by Plaintiffs on account of Defendants' late payment of the quarterly withdrawal installments that were due August 1, 2024, November 1, 2024, February 1, 2025, and May 1, 2025. (*Id.* ¶ 30).

To summarize, at present, Defendants are current on their quarterly withdrawal payments. They have also now paid all interest and liquidated damages accrued. However, to date, Defendants have not paid Plaintiffs any attorneys' fees. (Def. 56.1 ¶ 17).

## DISCUSSION

### A. Applicable Law

#### 1. Summary Judgment Under Federal Rule of Civil Procedure 56

Under Rule 56(a), a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322 (1986); *Anderson* v. *Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting *Anderson*, 477 U.S. at 248). Furthermore, a particular fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

The movant "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *ICC Chem. Corp.* v. *Nordic Tankers Trading A/S*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex*, 477 U.S. at 323). The movant can meet that burden in two ways: (i) by offering affirmative evidence that "demonstrate[s] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, or, if the burden of proof would fall on the nonmovant at trial, (ii) by simply "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," *Jaramillo* v. *Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). Should the movant discharge that burden, the nonmovant must then "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial to avoid summary judgment." *Id.* This requires the nonmovant to "go beyond the pleadings, and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Davis* v. *New York*, 316 F.3d 93, 100 (2d Cir. 2002) (internal quotation marks and citation omitted); *accord Parks Real Est. Purchasing Grp.* v. *St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006).

"When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dall. Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). Nevertheless, "[t]hough [the court] must accept as true the allegations of the party defending against the summary judgment motion, ... conclusory

statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Kulak* v. *City of New York*, 88 F.3d 63, 71 (2d Cir. 1996); *accord Hicks* v. *Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

**2. Withdrawal Liability and Default Under ERISA**

"ERISA is a 'pay-first-question-later' statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability." *Trs. of Laundry Dry Cleaning Workers & Allied Ret. Fund, Workers United* v. *Oceanside Int'l Indus., Inc.*, No. 16 Civ. 6194 (NSR), 2018 WL 1517207, at *1 (S.D.N.Y. Mar. 27, 2018) (quoting *Rao* v. *Prest Metals*, 149 F. Supp. 2d 1, 5-6 (E.D.N.Y. 2001)). When an employer withdraws from a multiemployer plan, the plan sponsor must determine the amount of the employer's withdrawal liability, notify the employer of the amount, and make a demand for payment. 29 U.S.C. § 1382. Once the employer receives notice of the demand, it must begin payment in accordance with the schedule within 60 days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2); *see also Trs. of Amalgamated Ins. Fund* v. *Steve Petix Clothier, Inc.*, No. 03 Civ. 4530 (PKC), 2004 WL 67480, at *3 (S.D.N.Y. Jan. 15, 2004).

Section 1399 of ERISA addresses employer defaults, and provides in relevant part:

> (5) In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the

> first payment which was not timely made. For purposes of this section, the term "default" means —
>
> > (A) the failure of an employer to make, when due, any payment under this section, if the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure, and
> >
> > (B) any other event defined in rules adopted by the plan which indicates a substantial likelihood that an employer will be unable to pay its withdrawal liability.

29 U.S.C. § 1399(c)(5).

"[A] plan's ability to declare a default and demand immediate payment of the entire amount of outstanding withdrawal liability during the pendency of plan review and arbitration is … [subject to] the regulations enacted by the [Pension Benefit Guaranty Corporation ("PBGC")]." *Scara-Mix I*, 2017 WL 9485710, at *14. For example, where a default is due solely to nonpayment under 29 U.S.C. § 1399(c)(5)(A), a plan may only declare a default where plan review or arbitration is pending under certain conditions specified by the PBGC. *See* 29 C.F.R. § 4219.31(c). However, where a plan finds an employer to be in default under 29 U.S.C. § 1399(c)(5)(B), "a plan is not similarly constrained and … may … demand immediate payment of withdrawal liability notwithstanding the pendency of plan review or arbitration." *Scara-Mix I*, 2017 WL 9485710, at *14; *see also Nat'l Ret. Fund* v. *InterContinental Hotels Grp. Res., LLC*, No. 19 Civ. 8018 (GHW), 2020 WL 1922755, at *7 n.6 (S.D.N.Y. Apr. 21, 2020) ("*IHG*") ("The [PBGC] … 'believes it is important for the protection of plans that they be able to exercise this [§ 1399(c)(5)(B)

acceleration] power at any time, even during plan review or arbitration.'" (quoting 49 Fed. Reg. 22642, 22644 (May 31, 1984))).

Pursuant to the unambiguous terms of the statute, "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 … shall be resolved through arbitration." 29 U.S.C. § 1401(a)(1). "This private arbitration procedure … is the administrative remedy that parties are directed to use before turning to a judicial forum." *T.I.M.E.-DC, Inc.* v. *Mgmt.-Lab. Welfare & Pension Funds, Of Local 1730 Int'l Longshoremen's Ass'n*, 756 F.2d 939, 945 (2d Cir. 1985). Because Section 1399's withdrawal liability provisions fall squarely within Section 1401's arbitration mandate, disputes regarding withdrawal liability must be submitted to arbitration. *See Scara Mix I*, 2017 WL 9485710, at *11; *Nat'l Pension Plan of Unite Here Works Pension Fund* v. *Westchester Lace & Textiles, Inc.*, No. 05 Civ. 6138 (RPP), 2006 WL 2051107, at *10 (S.D.N.Y. July 21, 2006) ("ERISA provides that disputes over withdrawal liability be resolved through arbitration"); *Rao*, 149 F. Supp. 2d at 6 (finding that all disputes related to imposition of withdrawal liability must be arbitrated); *Steve Petix Clothier, Inc.*, 2004 WL 67480, at *5 ("[The defendant's] ultimate withdrawal liability should be evaluated by an arbitrator, as Congress intended when it drafted section 1401(a)(1).").

**B. Plaintiffs Are Entitled to Demand Full and Immediate Payment of All Outstanding Withdrawal Liability, Despite the Pendency of an Arbitration Contesting That Liability**

Building on the Court's prior analysis, Plaintiffs argue that Defendants must pay the accelerated amount of their withdrawal liability now even as they contest the merits of the underlying claims in arbitration. (Pl. Br. 9-12). As set forth in the remainder of this section, the Court is constrained to agree.

**1. It Is Undisputed That Plaintiffs Determined That Defendants Were in Default, Entitling Them to Acceleration**

The most germane case on acceleration of withdrawal liability pending a final decision in arbitration is *Scara-Mix I*. In that case, trustees of certain funds administered for the benefit of a union sought to collect withdrawal liability, interest, liquidated damages, attorneys' fees, and costs based on the defendant's failure to pay withdrawal liability installment payments. *Scara-Mix I*, 2017 WL 9485710, at *1, 7. After receipt of the plaintiffs' notice and demand for payment of withdrawal liability, the defendant invoked its right under Section 1401 to arbitrate the assessment of that liability. *Id.* at *6. When the defendant continued to refuse to make withdrawal liability payments, the plaintiffs filed an action and moved for summary judgment, seeking acceleration of the full amount due plus additional fees and costs. *Id.* at *6-7. In her report and recommendation, United States Magistrate Judge A. Kathleen Tomlinson set forth a two-part framework to assess a fund's acceleration of withdrawal liability, which framework was then adopted by United States District Judge Joanna Seybert in *Scara-Mix II*.

*First*, *Scara-Mix I* established that "a plan may find an employer in default pursuant to 29 U.S.C. § 1399(c)(5)(B) and applicable plan rules and thereby accelerate payment of the full withdrawal liability balance, notwithstanding the pendency of an arbitration." *Scara-Mix I*, 2017 WL 9485710, at *15. In reaching this conclusion, Judge Tomlinson noted that "neither the statute nor the governing regulations indicate that default payments should be treated differently from any other withdrawal liability payments, which must be made before the decision on liability is made and therefore echo the general rule of pay now dispute later, and in no way indicate that acceleration due to default is an exception to this general rule." *Id.* (internal quotation marks omitted and alterations adopted) (quoting *Cent. States Se. & Sw. Areas Pension Fund* v. *O'Neill Bros. Transfer & Storage Co.*, 620 F.3d 766, 773 (7th Cir. 2010)).

*Second*, Judge Tomlinson proceeded to consider whether there was "a basis in the record to find the occurrence of an event … which could serve as the necessary predicate for imposition of a default and concomitant demand for acceleration pursuant [to] 29 U.S.C. § 1399(c)(5)(B)." *Scara-Mix I*, 2017 WL 9485710, at *17. She found that the defendant's conceded insolvency was such a qualifying event, and thus recommended that the defendant be "obligated, at this juncture, based upon [the p]laintiffs' demand, to remit the entire withdrawal liability balance pending the arbitrator's final determination on the merits." *Id.* at *18-19.

Here, Defendants do not dispute that Plaintiffs determined them to be in default under the Trust Agreement. Upon receiving Plaintiffs' information request contained in the Assessment, Defendants, rather than providing the requested information, asserted that they were no longer an employer under ERISA. (Def. 56.1 ¶ 12). Regardless of whether Defendants believe their assertion to be a response or a refusal, it is undisputed that Plaintiffs determined the assertion to be a "refus[al] to respond to the Fund's requests for information" (Pl. 56.1 ¶ 12), and that a "fail[ure] to provide [Plaintiff] with [a] response to [its] request for information under Section 4219(a) of ERISA" constituted an event of default under the Trust Agreement (Def. 56.1 ¶ 19; Trust Agreement, Art. VIII, § 6(2)(f)).

The default determination, related to withdrawal liability, occurs under Section 1399, ERISA's withdrawal liability provision.[4] "Any dispute between an employer and the plan sponsor of a multiemployer plan concerning a *determination* made under sections 1381 through 1399 of this title shall be resolved through arbitration." 29 U.S.C. § 1401(a) (emphasis added). Thus, having set forth an uncontested "basis in the record to find the occurrence of an event as set forth in [Art. VIII, § 6(2)(f) of the Trust Agreement] which could serve as the necessary predicate for imposition of a default," Plaintiffs may accelerate withdrawal liability pending a final resolution on the merits in

[4] Specifically, the default determination occurs under Section 1399(c)(5)(B), as it was based upon an "event defined in rules adopted by the plan," and not "the failure of an employer to make, when due, any payment[.]" 29 U.S.C. § 1399(c)(5). As such, it is not subject to the temporal constraints of 29 C.F.R. § 4219.31(c).

arbitration. *Scara-Mix I*, 2017 WL 9485710, at *17. (*See* Trust Agreement, Art. VIII, § 6(1) ("In the event of a default, [Plaintiffs] may require immediate payment of all or a portion of the outstanding amount of [Defendants'] withdrawal liability.")).

### 2. Defendants' Counterarguments Fail Because They Are Merits Determinations to Be Made by the Arbitrator

Defendants offer several arguments in opposition; while the arguments have intuitive appeal, they are ultimately directed to the wrong audience. *First*, Defendants contend that under 29 U.S.C. § 1399(c)(5)(B), "any plan-adopted default rule must be tethered to circumstances signaling a substantial likelihood the employer cannot pay the withdrawal liability," which it argues are not present here (or for which there is, at a minimum, a genuine dispute of material fact). (Def. Opp. 7-11). *Second*, Defendants argue that a default determination under the Trust Agreement requires "(i) no response and (ii) the absence of a reasonable explanation," neither of which they argue was satisfied here. (*Id.* at 4-7). As it happens, because both of these arguments concern determinations made under 29 U.S.C. § 1399, they are not properly before this Court. *See IHG*, 2020 WL 1922755, at *5 ("[T]he question of whether Plaintiffs correctly determined that Defendant was in default must be submitted to arbitration." (quoting *GCIU-Emp. Ret. Fund* v. *Vanard Lithographers, Inc.*, No. 12 Civ. 5169 (PSG), 2013 WL 12080961, at *3 (C.D. Cal. June 7, 2013))).

**i. The "Substantial Likelihood" of Defendants' Inability to Pay Is a Merits Question for the Arbitrator**

Defendants attempt to distinguish this case from Plaintiffs' authorities on the basis that here, there is no "concrete indicia of financial distress" (Def. Opp. 9), which they posit is necessary to satisfy the second prong of the *Scara-Mix* framework. Defendants are correct that, in many cases, the predicate event triggering default evinced the employer's clear inability to pay. (*See id.* at 9-10). In *Scara-Mix I* itself, the court found the defendant's conceded insolvency to be a "sufficient basis in the record for Plaintiffs' imposition of a default[.]" 2017 WL 9485710, at *19. Similarly, in *Westchester Lace*, the court noted evidence that the defendant had substantial liabilities and had made efforts to liquidate assets to support plaintiffs' default determination. 2006 WL 2051107, at *11. And, in *Retirement Fund of Fur Manufacturing Industry* v. *Robert Goldberg Furs, Inc.*, the court identified the defendant's dissolution as an event triggering default. 754 F. Supp. 356, 357 (S.D.N.Y. 1991).[5]

However, Defendants' argument fails because this Court finds persuasive the analysis of a sister court in this District in *IHG*; that analysis extrapolated

5 Defendants also cite *National Pension Plan of the UNITE HERE Workers Pension Fund* v. *Swan Finishing Co.*, No. 05 Civ. 6819 (SAS), 2006 WL 1292780 (S.D.N.Y. May 11, 2006), for this proposition. (Def. Opp. 9). However, in *Swan Finishing*, the court declined to accelerate withdrawal liability under a limited equitable exception that "applies where 'a pension plan's claims were deemed frivolous or not colorable' and an order compelling payment would cause 'unnecessarily harsh and unintended results.'" 2006 WL 1292780, at *3, 5 (quoting *Trs. of Amalgamated Ins. Fund* v. *Steve Petix Clothier, Inc.*, No. 03 Civ. 4530 (PKC), 2004 WL 67480, at *3-4 (S.D.N.Y. Jan. 15, 2004)). That limited exception does not apply here, and Defendants have not argued for its application. *Compare id.* at *5 (accelerating payment would cause irreparable harm by requiring defendant to sell real estate assets while arbitration on the merits was pending), *with* Def. Opp. 9 (describing Defendants as a "well capitalized enterprise").

from the *Scara-Mix* framework to find that events unrelated to insolvency or financial distress can serve as the necessary predicate for default under 29 U.S.C. § 1399(c)(5)(B). *IHG*, 2020 WL 1922755, at *8.[6] In that case, as here, the event of default under 29 U.S.C. § 1399(c)(5)(B) was the defendant's failure to respond to an information request. *Id.* at *7. The defendant there asserted that the plaintiffs' treatment of its failure to respond to an information request as an event of default did not comply with Section 1399(c)(5)(B)'s requirements because it did not "indicate 'a substantial likelihood that [the] employer [would] be unable to pay its withdrawal liability.'" *Id.* at *5 (quoting 29 U.S.C. § 1399(c)(5)(B)). The court, however, held that it "may not — and will not — ignore § 1401's mandate that disputes involving § 1399(c)(5)(B) determinations be resolved by an arbitrator in the first instance." *Id.*; *see also id.* ("Because this is a 'dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under section[ ] … 1399,' it 'shall be resolved through arbitration' and not by the Court in the first instance." (quoting 29 U.S.C. § 1401(a))).[7]

---

6 Defendants seek to distinguish *IHG*, which evaluated a motion to dismiss, based its procedural posture. (Def. Opp. 10). This Court finds that the substantive analysis remains the same, even as it is adapted to fit the procedural setting: While the *IHG* court was concerned with whether the plaintiff there made sufficient allegations to survive a motion to dismiss, this Court applies the summary judgment standard in assessing whether there is a genuine dispute of material fact as to whether Plaintiffs made a determination of default.

7 While the plaintiff in *IHG* did allege that "it adopted its information request default rule based on the substantial likelihood that employers who fail to respond to such requests will not pay their withdrawal liability," 2020 WL 1922755, at *7, Plaintiffs here, in making a default determination under Section 1399(c)(5)(B), have implicitly determined that Defendants' response to Plaintiffs' information demand indicated a substantial likelihood it could not pay, as required by the statute.

It follows that whether Plaintiffs' default determination required "evidence demonstrating a substantial likelihood of Defendants' inability to pay withdrawal liability" is not a question for this Court. (Def. Opp. 8). *See ILGWU Nat'l Ret. Fund* v. *Levy Bros. Frocks*, 846 F.2d 879, 886 (2d Cir. 1988) ("[T]he issues of statutory interpretation raised by [the defendant] largely involve interpretations under sections 1381 through 1399, interpretations which we believe Congress envisioned would be made by the arbitrator in the first instance."). Rather, while this Court may well agree with Defendants on the merits, the resolution of the question of whether sufficient evidence exists to demonstrate a "substantial likelihood" they could not pay their withdrawal liability, arising under Section 1399(c)(5)(B), properly belongs with the arbitrator.

#### ii. Whether a "Reasonable Explanation" for Defendants' Failure to Respond Exists Is a Merits Question for the Arbitrator

Under the Trust Agreement, the "default" underlying Plaintiffs' claim for acceleration occurred when Defendants "fail[ed] to provide [them] with [a] response to [their] request for information under Section 4219(a) of ERISA without reasonable explanation." (Def. 56.1 ¶ 19; Trust Agreement, Art. VIII, § 6(2)(f)). Defendants contend that their response — that they, "having sold Pioneer two years before the information demand, … were no longer an 'employer'" (Def. 56.1 ¶ 12) — satisfies the requirements of the Trust Agreement

and therefore cannot be the predicate for default and acceleration of withdrawal liability (Def. Opp. 4-7).

This question, too, goes to the merits and must be resolved by the arbitrator. Indeed, it is the subject of pending arbitration proceedings. (Def. 56.1 ¶ 23). "Though Defendants seek a determination from this Court that [Plaintiffs'] determination to require immediate payment pursuant to ERISA § 4219(c)(5) was unreasonable, ERISA provides that disputes over withdrawal liability be resolved through arbitration." *Westchester Lace & Textiles, Inc.*, 2006 WL 2051107, at *10; *see also Scara-Mix I*, 2017 WL 9485710, at *19 ("[T]he ultimate reasonableness of this determination in light of the underlying facts [is] a decision that must be resolved by the arbitrator[.]"); *Bowers* v. *Compania Peruana De Vapores, S.A.*, 689 F. Supp. 215, 220 (S.D.N.Y. 1988) (holding that the question of whether an entity was an "employer" was properly before the arbitrator, and that the entity had an obligation to make interim withdrawal liability payments pending resolution of arbitration, "especially when [the entity] has participated in the plan as an employer by making payments prior to the disputed withdrawal").[8]

[8] Defendants attempt to distinguish *Westchester Lace* on the basis that the defendants in that case "did not respond to the plaintiffs' request for information within the specified time." (Def. Opp. 7). That argument fails. That the defendants did not initially respond to the information request in *Westchester Lace*, *see Nat'l Pension Plan of UNITE HERE Works Pension Fund* v. *Westchester Lace & Textiles, Inc.*, No. 05 Civ. 6138 (RPP), 2006 WL 2051107, at *2 (S.D.N.Y. July 21, 2006), as compared with Defendants' "refus[al] to comply with written requests for financial information" here, *id.* at *10, is a distinction without a difference.

Put simply, Defendants have "misconstrued the scope of the Court's inquiry and ha[ve] thus 'authored a self-defeating argument'" by attempting to argue the merits. *Scara-Mix I*, 2017 WL 9485710, at *11 (quoting *Rao*, 149 F. Supp. 2d at 7 n.6). Despite Defendants' strong case on this record, the Court "cannot and will not adjudicate the underlying merits of the parties' factual dispute concerning withdrawal liability where the statute clearly precludes the same and where a parallel arbitration proceeding is considering such issues." *Id.* (*See also* Def. 56.1 ¶ 23 (stating that Defendants requested that the arbitrator decide whether they "defaulted under the governing Trust Agreement")).

Contrary to Defendants' suggestion (*see* Def. Opp. 6), this is not a matter of contract interpretation for this Court. The authorities Defendants cite do not arise in a withdrawal liability context. Nor could they. Under the plain language of the statute, this Court may not usurp the role that Congress left for the arbitrator. *See* 29 U.S.C. § 1401(a).

**C. Plaintiffs Are Entitled to Attorneys' Fees at This Stage**

29 U.S.C. § 1132(g)(2)(D) authorizes an award of "reasonable attorney's fees and costs of the action" to a plan only after "a judgment in favor of the plan is awarded[.]" Defendants argue that Plaintiffs' request for attorney's fees is premature at this stage because, in its view, the parties should wait until the "core questions of ERISA applicability, employer status, and alleged default" are decided by the arbitrator. (Def. Opp. 11).

However, 29 U.S.C. § 1132(g) does not make an award of attorneys' fees contingent upon a final award in arbitration. Rather, consistent with ERISA's pay now, dispute later framework, courts in this District have awarded attorneys' fees while "core questions" remain pending in arbitration. *See, e.g.*, *Nat'l Ret. Fund* v. *Ruprecht Co.*, No. 21 Civ. 4987 (CS), 2023 WL 4106672, at *9 (S.D.N.Y. June 21, 2023); *Swan Finishing Co.*, 2006 WL 1292780, at *5; *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds* v. *Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1508 (2d Cir. 1995) ("Permitting delinquent employers to avoid paying § 1132 penalties after suit … would largely thwart the purpose of § 1132(g)(2) to provide plan fiduciaries with an effective weapon against delinquent employers."). Because the Court grants summary judgment, it has now entered a "favorable judgment" in Plaintiffs' favor, "entitl[ing] [them] to all the measures of relief not already obtained," including attorney's fees. *Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d at 1507.

Nonetheless, while the Court finds that Plaintiffs are entitled to reasonable attorneys' fees, fee applications must be "accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Child., Inc.* v. *Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983). Plaintiffs have not submitted the requisite records — and concede that the Court, "*after* awarding fees, will need to make a 'reasonableness' determination" to assess what fees are due. (Pl. Reply 11). Therefore, while the Court awards attorneys'

fees contingent upon a final award in arbitration consistent with 29 U.S.C. § 1132(g)(2)(D), it defers to a later date the determination of reasonable fees and costs.

## CONCLUSION

ERISA's statutory command is clear: Upon a determination of default, Plaintiffs are entitled to immediate payment of all outstanding withdrawal liability and attorneys' fees, contingent upon a determination on the merits in arbitration. Thus, for the foregoing reasons, the Court GRANTS Plaintiffs' motion for summary judgment under Rule 56. Defendants are directed to make an accelerated payment of the entire withdrawal liability amount allegedly due based on its default within twenty (20) days of the date of this Opinion and Order, subject to a final determination by the arbitrator.

Separately, the parties are ORDERED to meet and confer to determine whether they can agree upon a figure for reasonable attorneys' fees and costs, and thereby stave off additional litigation that could result in "fees on fees." If the parties are unable to resolve the fees and costs issue on or before **August 7, 2026**, they are directed to submit a joint letter on that date proposing a briefing schedule for the Court's consideration.

SO ORDERED.

Dated: July 9, 2026
New York, New York

Katherine Polk Failla

KATHERINE POLK FAILLA
United States District Judge